# Moyer *v.* The Pennsylvania Railroad Company, Appellant.

*Negligence—Master and servant—Railroad companies—Interstate commerce—Act of Congress, March 2, 1893, c. 196, Sec. 2, 27 Stat. 531—Defective coupling equipment.*

1. A freight car consigned with merchandise from a point without the State to a destination within the State, which, after being unloaded at a freight yard, is shifted to another yard to await reloading, where it is stored for a few days, and which thereafter is to be shipped to another point without the State, loaded with freight, does not cease to be used in interstate traffic during the brief period of its unemployment; and if a railroad employee is injured in the shifting of such car from yard to yard in consequence of the railroad company's failure to equip the car with an automatic coupler as required by the Act of Congress of March 2, 1893, c. 196, §2, 27 Stat. 531, the railroad company will be liable.

*Trials — Witnesses — Discrepancies in statements — Points for charge—Instructions to the jury—Damages—Inadequate instructions—Waiver of objections.*

2. Where in the testimony of the plaintiff a discrepancy appears to which the witness' attention is not sufficiently directed so that he has an opportunity to explain and reconcile it, the trial judge properly refuses to charge the jury, that the witness' testimony is so far discredited that the jury would not be warranted in finding a verdict in his favor on his own uncorroborated testimony.

3. Where no special instructions on the measure of damages are asked for and where those given are not complained of at the trial, a judgment for plaintiff will not be reversed because of the inadequacy of the instructions relating to the measure of damages.

Argued Oct. 8, 1914. Appeal, No. 15, Oct. T., 1914, by defendant, from judgment of C. P. Washington Co., May T., 1913, No. 263, on verdict for plaintiff in case of Oscar G. Moyer v. The Pennsylvania Railroad Company. Before MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before RUPPEL, P. J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $8,500 and judgment thereon. Defendant appealed.

*Errors assigned* were instructions to the jury, answers to points, the refusal of the court to direct a verdict for defendant, and to enter judgment for defendant n. o. v.

*Rufus S. Marriner,* with him *Jas. A. Wiley,* for appellant.—The car which caused the injury was not being used in interstate commerce at the time of the accident, and the Act of Congress of March 2, 1893, c. 196, Sec. 2, 27 Stat. 531, does not apply : Chicago & N. W. Ry. Co. v. United States, 168 Fed. 236; United States v. Rio Grande Western Ry. Co., 174 Fed. 399; Erie R. R. Co. v. U. S., 197 Fed. 287; Southern Ry. Co. v. Snyder, 187 Fed. 492; Erie R. R. Co. v. Russell, 183 Fed. 722; Johnson v. Southern Pacific Co., 196 U. S. 1; Southern Ry. Co. v. U. S., 222 U. S. 20; Galveston H. & S. A. Ry. Co. v. U. S., 199 Fed. 891; St. Louis Iron Mountain & S. Ry. Co. v. Taylor, 210 U. S. 281; United States v. Wheeling & Lake Erie R. R. Co., 167 Fed. 198; Illinois Central Railroad Company v. Behrens, 233 U. S. 473; Pedersen v. Del., Lack. & Western R. R. Co., 229 U. S. 146; Central R. R. of N. J. v. Colasurdo, 192 Fed. 901; Southern Ry. Co. v. U. S., 222 U. S. 20; Northern Pacific Ry. Co. v. Maerkl, 198 Fed. 1; Lamphere v. Oregon R. R. & Nav. Co., 193 Fed. 248.

The plaintiff's evidence was contradictory and the jury should have been instructed that it was therefore unworthy of credence, as requested by defendant's 7th point: Black v. Philadelphia Transit Co., 239 Pa. 463; Ely v. Pittsburgh, Cincinnati, Chicago & St. Louis Railway, 158 Pa. 233. Instructions to the jury on the measure of damages were inadequate: Baker v. Irish, 172 Pa. 528; McLaughlin v. Corry, 77 Pa. 109; Scott Township v. Montgomery, 95 Pa. 444; Smedley v. Railway

Co., 184 Pa. 620; Seifred v. Railroad, 206 Pa. 399; Iseminger v. Power Co., 209 Pa. 615.

*W. A. Stone,* of *Stone and Stone,* with him *W. Clyde Grubbs* and *Alexander M. Templeton,* for appellee.— The car was engaged in interstate commerce and the Federal Coupler Act applies: Voelker v. Chicago M. & St. P. Ry. Co., 116 Fed. 867; Johnson v. Great Northern Ry. Co., 178 Fed. 643; Johnson v. Southern Pacific, 196 U. S. 1; Southern Railroad v. United States, 222 U. S. 20; Chicago, Rock Island & Pacific Railroad Co. v. Brown, 229 U. S. 317.

Plaintiff's evidence was for the jury: Danko v. Pittsburgh Railways Company, 230 Pa. 295; Cronmuller v. Evening Telegraph, 232 Pa. 14; Black v. Philadelphia Rapid Transit Company, 239 Pa. 463; Sanson v. Philadelphia Rapid Transit Company, 239 Pa. 505.

As no exception to that portion of the charge relating to the measure of damages were taken, and no additional instructions asked for, it is too late to complain that the charge was inadequate with regard to the measure of damages.

Opinion by Mr. Justice Stewart, January 2, 1915:

Under instructions not here complained of, the jury found that the plaintiff's injuries resulted in consequence of the car on and about which he was employed not being equipped with a coupler coupling automatically by impact, as prescribed by the Federal Statute of March 2, 1893, c. 196, Sec. 2, 27 Stat. 531, for cars used in moving the interstate traffic. The defendant is a common carrier engaged in both intra and interstate commerce. The plaintiff was one of a shifting crew in the employ of the defendant company, whose duty it was to shift cars from one yard to another, or from one place or track to another within the same yard, accordingly as directed, whether used in intra or interstate commerce. The particular car which inflicted the injury

complained of belonged to a foreign company; it had been forwarded, laden with merchandise and destined to Donora, Washington County, Pennsylvania, from Logansport, Indiana. It reached Donora on 18th December, 1911. Having been there unloaded it was sent to the Carson street yard of the defendant company at Pittsburgh on the 21st, and on the day following it was shifted to the company's yard at 30th St., in Pittsburgh? Within a short time thereafter this same car was loaded with glass consigned to Louisville, Kentucky, and there is nothing to show that in the meanwhile it was in any way employed. The plaintiff was injured while it was being shifted from the Carson street yard to the 30th street yard. The learned trial judge in his general charge instructed as follows:

"We say to you as a matter of law that the facts as developed on the trial show that this car was engaged in interstate commerce, and was such as brought it within the provisions of the Act of 1893." This is assigned as error, as is also his refusal to instruct in acordance with defendant's third point, which reads as follows:

"There is no evidence in this case which would warrant the jury in finding that the car which injured the plaintiff was, at the time he received his injuries, being used in interstate commerce, and there can be no recovery by the plaintiff under the Employers' Liability Act." These assignments do not call for separate consideration; together they raise but a single question. Section 2 of the Federal Statute of March 2, 1893, c. 196, 27 Stat. 531, reads as follows:

"That on and after the 1st day of January, eighteen hundred and ninety-eight, it shall be unlawful for any such common carrier to haul or permit to be hauled or used on its line any car used in moving interstate commerce not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars." The facts with respect to the employment of the car that

injured the plaintiff, from the time it left Logansport, Indiana, until its return to Louisville, Kentucky, are not in dispute. The further fact that it was not equipped with such coupler as is described in the above mentioned statute may be accepted as proved since it was so found by the jury. It will be conceded, of course, that this car was employed in interstate commerce from the time it left Logansport until discharged of its freight at Donora. It will be further conceded that had it been at once returned, though empty, to the place where it belonged, it being a foreign car, it would on its return trip have been still so employed. So much has been repeatedly decided, and we need not delay to cite the cases so ruling. It is sufficient to refer to the case of Johnson v. Southern Pacific Co., 196 U. S. Page 1. This car was not started on its return for several days, and meanwhile, so far as appears in the evidence, it remained at rest in the yards of the company, except when being shifted from one yard to another, in the course of which work the accident happened. Can it be said that because it had discharged its freight and was not actually employed in transportation for two or three days following, it had ceased to be a car "used in moving interstate traffic"? The last actual use it had been put to was that of moving interstate commerce; the next use it was put to was the same; it had not been employed while remaining in charge of the defendant company in any other; it was detained in the defendant company's yards, so far as appears, only to await the company's convenience in returning it to where it belonged. With these facts established, the question, we think, admits of but one answer—the car at the time of the accident was a car used in moving interstate traffic. The facts being as stated above, the learned trial judge committed no error in ruling as he did.

Very much of the brief submitted by the learned counsel for appellant is devoted to an argument based on facts which nowhere appear in the evidence. If we as-

sume that this car had been detained in the yard of defendant company for purpose of repair, and that the accident had occurred while the car was shipped to a place where repairs could be made, the argument would be well directed and not without force. We do not say with what effect, for no such question here arises. We have searched this record in vain for any evidence that this car was being shifted from one yard to the other to be repaired. The defendant's own witness, Mr. Shauer, the assistant trainmaster, having testified in chief that plaintiff's injury happened while the car was being moved to the shop yard or track, was asked this question:

"Q.—The shop track to be repaired?" his answer was, "I am not prepared to state that." He was then asked, "Q.—It was going on the shop track, and that is the only purpose for which you put cars on the shop track is it not?" He replied, "Not necessarily, they are put there to be cleaned sometimes." Later on the same witness was asked, "Well, then, when it was brought to the 30th street yard it was not being brought there definitely to be loaded to any particular point?" To this he replied, "No, sir, it was being brought there for storage purposes, subject to orders to be loaded anywhere." Not a word from this or any other witness to the effect that the car was detained for repairs; and further, not a word from this or any other witness to the effect that the car was out of repair, can be found in the testimony. The plaintiff's complaint was not that the car was out of repair, but that its equipment did not correspond to the requirements of the statute.

In the fifth and sixth assignments complaint is made of the refusal to instruct as requested by the defendant with respect to conflicting statements by the plaintiff as to the circumstances under which his injuries were received. An affirmation of these points would have been the equivalent of binding instructions for the defendant. The plaintiff in his testimony, both upon examination in chief and in his cross-examination, had stated explicitly

that he had placed himself in front of the car and be-
tween the tracks, with a purpose of so fixing the coupler
by opening what is called the knuckler that it would
couple by impact. He also stated that it was part of his
purpose to cross to the farther side of the track. The
fact of this additional purpose would avail nothing to
the defendant, except as the accident could be referred
to it as the proximate cause. That question was passed
upon by the jury, and we may therefore dismiss it from
consideration. No contradictions are found in the testi-
mony of the witness except that having testified as we
have stated to the facts relating to the occurrence, he
admitted, in the concluding part of his cross-exam-
ination, the correctness of a written statement signed by
himself shortly after the occurrence, and which it is
claimed, attributed his accident to something else than
an attempt on his part to adjust the coupler. The in-
struction asked for was that, inasmuch as the plaintiff
admits that the statements contained in a written paper
were correct and true with reference to what he was do-
ing at the time of the accident, and as to how the acci-
dent occurred, and these statements being entirely dif-
ferent from his testimony in court as to what he was
doing at the time of the accident, and as to how the ac-
cident occurred, that "his testimony is so far discredited
that the jury would not be warranted in finding a verdict
in his favor on his own uncorroborated testimony." It
would have been manifest error to have affirmed such a
proposition as this, not only because in affirming the
court would have been assuming the function of the jury,
but because, as well, it would have been most unfair to
the witness. In the course of his examination the at-
tention of the witness was not specifically directed to
what is claimed to be a discrepancy. No matter how
obvious to counsel a discrepancy may be, if the discrep-
ancy is to be argued against the witness' credibility, it
is only fair to him that his attention be specifically di-
rected to it, so that he may have opportunity to explain

and reconcile the difference if he can.   Except as such rule obtains the most innocent and truth-telling witness may be involved in contradictions innocently made, and thus have his credibility exposed to attack when a simple explanation would have removed all appearance of conflict.

The remaining assignment alleges error in the instruction given as to the measure of damages.   No special instructions on this branch of the case were asked for, and those given were not complained of at the time, though full opportunity was given counsel to indicate wherein in their judgment they came short, or were for any reason unsatisfactory.   We are not convinced that any error was committed; the instructions were perhaps open to the criticism that a fuller discussion of the subject by the court might have been helpful to the jury, but this either side could have had upon request.   It is too late now to make complaint.   Considering the extent and character of the plaintiff's injuries and the amount of damages allowed, if either side was prejudiced, there is much reason to think that it was the plaintiff rather than the defendant who suffered.

The assignments of error are overruled and the judgment is affirmed.